*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2068**

State of Minnesota,
Respondent,

vs.

Jeffrey Travis Elledge,
Appellant.

**Filed November 16, 2015
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-CR-12-9850

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)


Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**KIRK**, Judge

Appellant Jeffrey Travis Elledge challenges his conviction of first-degree test refusal, arguing that his right to consult with his attorney was not vindicated because: (1) he was not allowed to personally access his attorney's cellphone number while he was handcuffed during the implied-consent advisory; (2) he was not given a reasonable opportunity to contact his attorney after business hours had ended; and (3) Minnesota's test-refusal statute is unconstitutional. We affirm.

**D E C I S I O N**

The Minnesota Constitution provides individuals who are arrested for driving while impaired (DWI) with a limited right to counsel before deciding whether to submit to a breath test. Minn. Const. art. I, § 6; *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 840 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992). This right is vindicated if the driver "is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) (quotation omitted). "The question of whether a person has been allowed a reasonable time to consult with an attorney is a mixed question of law and fact." *Palme v. Comm'r of Pub. Safety*, 541 N.W.2d 340, 344 (Minn. App. 1995) (quotation omitted), *review denied* (Minn. Feb. 27, 1996). "Once those facts are established, their significance becomes a question of law." *Parsons v. Comm'r of Pub. Safety*, 488 N.W.2d 500, 501 (Minn. App. 1992).

We examine the totality of the circumstances when determining whether a driver's right to counsel has been vindicated. *Kuhn*, 488 N.W.2d at 842. The relevant factors "focus both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right." *Id.* As a threshold matter, "the driver must make a good faith and sincere effort to reach an attorney." *Id.* A police officer is required to assist the driver in the vindication of this right to counsel. *McNaughton v. Comm'r of Pub. Safety*, 536 N.W.2d 912, 914 (Minn. App. 1995) (citation omitted). The assistance includes providing the driver with a telephone, telephone directory, and a reasonable time to contact an attorney. *Id.* at 915. A second factor "involves the time of day when the driver tries to contact an attorney" and a driver "should be given more time in the early morning hours when contacting an attorney may be more difficult." *Kuhn*, 488 N.W.2d at 842.

Appellant relies on *Linde v. Comm'r of Pub. Safety*, 586 N.W.2d 807, 810 (Minn. App. 1998), to argue that his right to counsel was not vindicated because Officer George did not allow him to personally access his attorney's cellphone number while he was handcuffed for unruly and disruptive behavior. Appellant contends that the phone number to his attorney, Paul Rogosheske, was stored in appellant's cellphone.

The district court's findings of fact are as follows: when Officer George attempted to arrest appellant for suspicion of DWI, appellant resisted arrest to the extent that it took three officers to place him in handcuffs. Appellant yelled, screamed, and threatened the officers. At the police station, appellant interrupted Officer George while he read the

implied-consent advisory. When the officer asked appellant if he wanted to speak with an attorney, appellant replied that he wanted to contact his attorney.

Officer George provided appellant with the station phone, access to appellant's cellphone, offered him phone books, went on the internet to locate Rogosheske's phone number, and provided a call-back number of the police station for appellant to give to Rogosheske's receptionist so that Rogosheske could call him back. When appellant learned from the receptionist that Rogosheske was not available, Officer George asked him if he wished to contact another attorney, and appellant replied, "No, absolutely not. Why would I call anyone but the super Minnesota lawyer?" Officer George asked appellant if they could move on with the implied-consent process, and appellant said, "Sure." Officer George asked appellant if he would take a breath test, and appellant said, "No."

Copies of the video and audio recording of Officer George's administration of the implied-consent advisory reading were admitted into evidence, along with a transcript. After reviewing the record, the district court did not err in finding that Officer George did everything possible to vindicate appellant's right to counsel. Officer George acted reasonably by keeping appellant handcuffed during the implied-consent advisory given his combative and unruly behavior. *See Sylvester v. Nw. Hosp. of Minneapolis*, 236 Minn. 384, 388, 53 N.W.2d 17, 20 (1952) ("The seriousness and the frequency of the harm that an intoxicated person is likely to cause third persons has become so well recognized.").

We conclude that appellant's reliance on *Linde* is misplaced. In *Linde*, we held that "refusing to allow a driver to dial the telephone personally does not, by itself, deny the driver's right to counsel." 586 N.W.2d at 810. The record supports the district court's findings. Officer George offered to help appellant find Rogosheske's cellphone number on appellant's cellphone, but appellant refused Officer George's offer. Officer George located a phone number to reach Rogosheske on the internet, repeated the phone number to appellant, and asked him if it was the correct phone number to reach Rogosheske. Appellant agreed that it was. Appellant also spoke with Rogosheske's receptionist for approximately five minutes, who told him that Rogosheske was unavailable that evening. Appellant agreed that he would speak to Rogosheske early the next morning. "If a driver tries to call an attorney but is unsuccessful and does not want another attorney, the driver's limited right to counsel has been vindicated." *Mulvaney v. Comm'r of Pub. Safety*, 509 N.W.2d 179, 181-82 (Minn. App. 1993) (citation omitted).

Appellant next argues that Officer George did not give him a reasonable opportunity to contact Rogosheske using his cellphone number, which was the most effective way to reach him after business hours. *Kuhn*, 488 N.W.2d at 840. In *Kuhn*, we held that the police did not give a driver a reasonable opportunity to contact and consult with an attorney prior to chemical testing where the officer terminated the driver's good-faith and sincere effort to contact an attorney after 24 minutes. *Id.* at 842. In contrast, appellant reached Rogosheske's office, was satisfied that he would talk to Rogosheske in the morning, and told Officer George that he did not want to contact another lawyer. On

5

these facts, the district court did not err in concluding that appellant's right to counsel was vindicated.

Finally, appellant argues that Minnesota's test-refusal statute is unconstitutional because it violates his substantive due-process rights and the doctrine of unconstitutional conditions. However, the Minnesota Supreme Court addressed the substantive due-process argument and rejected it in *State v. Bernard*, 859 N.W.2d 762, 773-74 (Minn. 2015). Moreover, in *State v. Bennett*, 867 N.W.2d 539, 543 (Minn. App. 2015), we held that the test-refusal statute does not violate the unconstitutional-conditions doctrine. Appellant's arguments are foreclosed by precedent.

**Affirmed.**